1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA
10
11  MARIA HERNANDEZ,                    )      NO. CV 12-5723 AGR
12              Plaintiff,              )
13          v.                          )
14  CAROLYN W. COLVIN,                  )      MEMORANDUM OPINION AND
    Commissioner of Social Security,    )      ORDER
15                                      )
16              Defendant.              )
17  _____    )

18          Plaintiff Maria Hernandez filed this action on July 11, 2012.  Pursuant to 28

19  U.S.C. § 636(c), the parties consented to proceed before the magistrate judge.

20  (Dkt. Nos. 11, 13.)  On April 15, 2013, the parties filed a Joint Stipulation ("JS")

21  that addressed the disputed issues.  The court has taken the matter under

22  submission without oral argument.

23          Having reviewed the entire file, the court affirms the decision of the

24  Commissioner.

25
26
27
28

**I.**

## PROCEDURAL BACKGROUND

On July 29, 2009, Hernandez filed an application for disability insurance benefits, alleging an onset date of May 21, 2009.  Administrative Record ("AR") 16, 122.  The application was denied initially and on reconsideration.  AR 16, 56, 60.  Hernandez requested a hearing before an Administrative Law Judge ("ALJ").  AR 75.  On October 27, 2010, the ALJ conducted a hearing at which Hernandez and a vocational expert ("VE") testified.  AR 28-48.  On November 29, 2010, the ALJ issued a decision denying benefits.  AR 10-24.  On March 1, 2012, the Appeals Council denied the request for review.  AR 3-7.  This action followed.

**II.**

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

2

**III.**

**DISCUSSION**

**A.** **Disability**

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

**B.** **The ALJ's Findings**

Following the five-step sequential analysis applicable to disability determinations, *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Hernandez has the severe impairments of lumbar degenerative disc disease, diabetes mellitus, and obesity. AR 18. She does not have an impairment or combination of impairments that meets or equals one of the listed impairments. AR 20. She has the residual functional capacity ("RFC") to perform light work, including lifting 20 pounds occasionally and 10 pounds frequently, and standing and/or walking for 6 hours in an 8-hour workday. She cannot climb ladders, ropes or scaffolds. She can frequently perform other postural activities, such as balancing, stooping, kneeling, crouching, crawling, and climbing ramps/stairs. She cannot have concentrated exposure to industrial hazards, such as unprotected heights and dangerous machinery. *Id.* She is capable of performing her past relevant work as a mold maker as generally performed, and as a hand packager as actually performed. AR 23-24.

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsbury,* 468 F.3d at 1114.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### C.   Treating Physician

Hernandez contends the ALJ erred in failing to properly evaluate the opinion of Dr. Grogan, a treating physician.

An opinion of a treating physician is given more weight than the opinions of non-treating physicians.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  To reject an uncontradicted opinion of a treating physician, an ALJ must state clear and convincing reasons that are supported by substantial evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  When, as here, a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  *Orn*, 495 F.3d at 632 (citations and quotation marks omitted).  "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict."  *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

Dr. Grogan, an orthopaedic surgeon, completed five physical examination reports on May 21, 2009, August 6, 2009, November 17, 2009, February 24, 2010, and April 20, 2010.  AR 292-96, 299.   On May 21, 2009, Dr. Grogan found full range of motion of the shoulders, elbows, wrists and hands.  AR 295.  Motor examination was 5/5.  Sensation was intact to touch.  Grip strengths on the right side were 15/12 and 15/15 on the left.  Gait was normal.  *Id.*  Hernandez had pain to palpation in the cervical and lumbar spine.  Range of motion was 70% of expected normal values for the cervical spine and 75% of expected normal values for the lumbar spine.  *Id.*  Hernandez had full range of motion of hips, ankles, and subtalar joints bilaterally.  Motor examination was 5/5, and sensation was intact to touch.  Straight leg raising was positive bilaterally for back pain.  *Id.*  X-rays of the cervical and lumbar spine indicated multi-level degenerative disc

1  disease, especially in the lumbar spine at L5-S1.  AR 296.  Dr. Grogan diagnosed

2  Hernandez with degenerative disc disease, cervical and lumbar spine; and history

3  of diabetes mellitus, atherosclerotic cardiovascular disease with hypertension,

4  and depression.  He opined that Hernandez "is physically incapable of returning

5  back to her previous work as a packer of shampoo bottles and should be

6  precluded from that type of employment."  *Id.*  The remaining physical

7  examination reports were similar to the May 21, 2009 report, except that on April

8  20, 2010, Dr. Grogan opined that Hernandez should be permanently precluded

9  from returning to work as a packer.  AR 292-94, 299.

10  Dr. Grogan completed nearly identical physical capacities evaluations and

11  disability letters on February 24 and October 4, 2010.  AR 289-90, 297-98.

12  Hernandez could sit for three hours at one time and four hours total; stand two

13  hours at a time and three hours total; and walk one hour at a time and two hours

14  total in an eight-hour workday.  She could occasionally lift or carry up to five

15  pounds.  She could not use her hands for repetitive pushing and pulling of arm

16  controls, but she could perform simple grasping and fine manipulation.  She could

17  not use her feet for repetitive pushing and pulling of leg controls.  AR 289, 297.

18  She could occasionally bend, reach, squat, crawl or climb.[2]  AR 297.  She had

19  mild restrictions from exposure to marked changes in temperature and humidity

20  and exposure to dust, fumes and gases.  She had moderate restrictions from

21  unprotected heights, being around moving machinery, and driving automotive

22  equipment.  AR 289, 297.  In letters, Dr. Grogan stated that Hernandez "is

23  presently partially totally disabled" at least through August 1, 2010.  AR 290, 298.

24  She was diagnosed with degenerative disc disease, cervical and lumbar spine,

25  and insulin dependence.  AR 290, 298.

26

27

28      [2] In the February 24, 2010 evaluation, Dr. Grogan opined that Hernandez could not squat, crawl or climb.  AR 289.

5

The ALJ gave "relatively little probative weight" to Dr. Grogan's opinions. AR 23.  The ALJ noted "there is no indication that [Dr. Grogan] has actually provided any medical treatment."  *Id.*  "[I]t appears [Hernandez] has seen Dr. Grogan primarily in order to generate evidence of disability."  *Id.*  Dr. Grogan's reports do not support the extreme limitations he assessed and the "relatively normal clinical findings" in the record do not support his extreme limitations.  *Id.*

The ALJ provided specific and legitimate reasons for discounting his opinion.  *See Orn*, 495 F.3d at 632.  The ALJ properly considered that Dr. Grogan's examination reports did not support the extreme limitations he opined. AR 21, 292-95, 299.  "'[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'"  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation omitted).[3]

The ALJ properly considered that Dr. Grogan's opinions were inconsistent with the relatively normal clinical findings in the record.  As the ALJ noted, Hernandez's physician, Dr. Palazzolo, indicated that in April 2009, Hernandez was "doing better overall" with her blood pressure and glucose.  AR 22, 246. Hernandez reported that her medication was helping her peripheral neuropathy and foot pains, and she was able to walk better.  AR 22, 246.  In July 2009, Dr. Palazzolo noted "markedly good improvement" of Hernandez's glucose levels and some tingling of the feet.  AR 237.

---

[3]  The ALJ also considered that the record lacks evidence showing that Dr. Grogan provided medical treatment.  AR 23; *Orn*, 495 F.3d at 631 (ALJ may consider nature and extent of treatment relationship).  The ALJ found no indication that Dr. Grogan "prescribed any medications, ordered any diagnostic tests, or recommended any particular course of treatment."  AR 23.  The ALJ could reasonably infer that Hernandez saw Dr. Grogan "to generate evidence of disability" rather than provide treatment.  *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (ALJ may draw reasonable inferences logically flowing from the record).

1    The ALJ noted that the examining physician, Dr. Singh, found that
2  Hernandez was essentially normal.  AR 21.  Dr. Singh found that Hernandez had
3  no problems walking from the waiting room to the examination room, getting on
4  and off the examination table, or sitting comfortably during the examination.  Her
5  gait was normal.  AR 262.  She had no swelling, tenderness or synovial
6  thickening of the hands and wrists, and had a negative Tinel's sign.  She had no
7  paravertebral spasm, tension or tenderness on palpation to the neck or back.
8  She exhibited normal flexion and extension in the neck and back, and had a
9  negative straight leg raising test.  She had no crepitus, clubbing, cyanosis,
10  tenderness or deformity of the upper or lower limbs.  She exhibited normal ranges
11  of motion in the upper and lower extremities and joints.  AR 263.  She had normal
12  motor strength in all muscle groups with no evidence of atrophy, and normal
13  sensation, cerebellar function, and reflexes.  AR 264.  Dr. Singh noted
14  Hernandez's insulin dependent diabetes mellitus with early signs of peripheral
15  neuropathy, and acknowledged her history of back pain, knee pain and foot pain.
16  AR 265.  However, he noted "there are no physical findings or limitations at this
17  time."  *Id.*  He opined Hernandez could stand and walk for 6 hours and could lift
18  and carry 25 pounds occasionally and frequently.  AR 22, 265.  Dr. Singh's
19  opinion constituted substantial evidence because it was based on independent
20  clinical findings.  *See Orn*, 495 F.3d at 632.

21    Hernandez contends Dr. Grogan's opinions are consistent with the record
22  as a whole.  She argues that Dr. Grogan's examination records support her claim
23  that she has peripheral neuropathy of the lower extremity and changing
24  neuropathy over the course of the year.  She argues that Dr. Grogan's opinions
25  are consistent with the Mission Hills Medical Group medical records that
26  demonstrate neuropathy in the upper and lower extremities (AR 215-17, 227,
27  237-42, 251); the medical records of Dr. Chaudry, a podiatrist, that indicated she
28  had plantar fasciitis and diabetic neuropathy (AR 222, 236); and the findings of

1   Dr. Singh, a consultative examiner, who opined that she had insulin dependent

2   diabetes mellitus and was developing early signs of peripheral neuropathy (AR

3   265).  Contrary to Hernandez's argument, however, "the mere existence of an

4   impairment is insufficient proof of a disability."  *Matthews v. Shalala*, 10 F.3d 678,

5   680 (9th Cir. 1993); 20 C.F.R. §§ 416.920(f), (g).

6          The ALJ articulated specific and legitimate reasons for discounting Dr.

7   Grogan's opinion.

8          **D.  The ALJ's RFC**

9          Hernandez contends the ALJ erred in not including limitations due to

10  peripheral neuropathy in her RFC.

11         The RFC measures the claimant's capacity to engage in basic work

12  activities.  *Bowen v. New York*, 476 U.S. 467, 471, 106 S. Ct. 2022, 90 L. Ed. 2d

13  462 (1986).  The RFC is a determination of "the most [an individual] can still do

14  despite [his or her] limitations."  20 C.F.R. § 404.1545(a).  It is an administrative

15  finding, not a medical opinion.  20 C.F.R. § 404.1527(e)(2).  The RFC takes into

16  account both exertional limitations and non-exertional limitations.  "When there is

17  conflicting medical evidence, the Secretary must determine credibility and resolve

18  the conflict."  *Thomas*, 278 F.3d 947, 956-57 (citation omitted).

19         The ALJ noted that Hernandez's diabetes had not been well-controlled and

20  may have caused early diabetic peripheral neuropathy.  AR 18, 265, 292-96.  The

21  ALJ found that Hernandez had the RFC for light work, including lifting 20 pounds

22  occasionally and 10 pounds frequently, and standing and/or walking for 6 hours in

23  an 8-hour workday.  She cannot climb ladders, ropes, or scaffolds; can frequently

24  perform other postural activities, such as balancing, stooping, kneeling,

25  crouching, crawling, and climbing on ramps/stairs; and cannot have concentrated

26  exposure to industrial hazards, such as unprotected heights or dangerous

27  machinery.  AR 20.

28

1    Hernandez argues that her peripheral neuropathy inhibits her ability to

2  stand, walk, push, pull, lift, and manipulate objects.  She cites medical records

3  from her primary care physicians at Mission Hills Medical Group, who noted

4  neuropathy with pain or numbness in the lower extremities.  AR 215-17, 227,

5  237-38, 240-41.  She cites the records of her podiatrist, who diagnosed plantar

6  fasciitis and diabetic neuropathy and dispensed orthotics.[4]  AR 222, 236.  She

7  cites the records of Dr. Grogan, who noted decreased range of motion of the

8  lumbar spine, positive straight leg raising test, complaints of chronic foot pain,

9  numbness and tingling in both legs, decreased sensation in the lower extremities,

10  and pain and burning in both legs.  AR 293, 295, 299.

11    The ALJ specifically considered pain and the impact of peripheral

12  neuropathy when determining Hernandez's RFC.  AR 18, 21-23.  He noted that

13  her subjective musculoskeletal complaints did not correlate to Dr. Singh's clinical

14  findings on examination.  AR 22.  He noted the lack of evidence that Hernandez

15  had sought or received injections, surgeries or other treatment apart from

16  medication to address her allegations of disabling musculoskeletal pain.  *Id.*; *see*

17  *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (medication

18  constitutes conservative treatment).  Despite Hernandez's allegations of pain, she

19  has no problems with dressing, grooming, and bathing herself.  She can cook, do

20  dishes, do laundry, take walks, drive a car and go grocery shopping.  AR 22, 261.

21    The ALJ properly discounted Dr. Grogan's opinions.  Dr. Palazzolo's

22  records indicated that medication helped Hernandez's peripheral neuropathy and

23  foot pains.[5]  *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th

24

25    [4]  The podiatrist found no significant edema, no sensory deficits, no clonus
26  elicited, intact neurovascular status, equal and reactive deep tendon reflexes, and
   normal temperature, turgor and texture.  AR 222.

27    [5]  Hernandez argues that although she was able to "walk better" with
28  medication, "she continued to have pain, burning, numbness, tingling in the lower
   extremities and some in the upper extremities."  JS 31.

Cir. 2006) (impairments that can be controlled effectively with medication are not considered disabling).  The remaining records on which Hernandez relies do not provide medical evidence of functional limitations relating to her upper and lower extremities other than the limitations in the RFC.  "[T]he mere existence of an impairment is insufficient proof of a disability."  *Matthews*, 10 F.3d at 680.  As noted above, Dr. Singh found that Hernandez had insulin dependent diabetes mellitus and was developing early signs of peripheral neuropathy.  AR 265.  He found Hernandez's upper and lower extremities entirely normal.  AR 263.  He concluded that she could stand and walk for 6 hours, walk without assistive devices, and lift and carry 25 pounds occasionally and frequently.  He found no restrictions posturally, manipulatively and environmentally.  AR 265.  Dr. Vaghaiwalla found that Hernandez could perform medium work with no postural or manipulative limitations.  AR 272-77.

Hernandez has not shown error.

**E.  Vocational Expert**

Hernandez argues the ALJ erred in relying on the VE's testimony because the hypothetical did not encompass all of her impairments, including pain and numbness in her lower and upper extremities from peripheral neuropathy.

An ALJ may rely on a VE's testimony given in response to a hypothetical question that contains all of the limitations the ALJ found credible and supported by substantial evidence.  *Bayliss*, 427 F.3d at 1217-18.

The ALJ's hypothetical contained all the limitations he found supported by substantial evidence and included in his RFC.[6]  *See Rollins v. Massanari*, 261 F.3d 853, 858 (9th Cir. 2001) ("Because the ALJ included all of the limitations that he found to exist, and because his findings were supported by substantial

---

[6]  Hernandez's reliance on *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1235 (9th Cir. 2011), is misplaced.  In *Taylor*, the ALJ failed to include in the hypothetical all of the claimant's impairments in the RFC.  *Taylor*, 659 F.3d at 1235.

10

1   evidence, the ALJ did not err in omitting the other limitations that [the plaintiff] had

2   claimed, but had failed to prove."); AR 20, 46-47.  The VE testified that a person

3   with Hernandez's RFC could perform past relevant work as a mold maker as

4   generally performed, and a hand packager as actually performed.  AR 24, 47.

5   The ALJ was entitled to rely on the VE's testimony.  *See Bayliss*, 427 F.3d at

6   1217-18.  The ALJ did not err.

7       **F.   Credibility**

8       Hernandez argues that the ALJ improperly evaluated her credibility.

9       "To determine whether a claimant's testimony regarding subjective pain or

10  symptoms is credible, an ALJ must engage in a two-step analysis."  *Lingenfelter*

11  *v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  At step one, "the ALJ must

12  determine whether the claimant has presented objective medical evidence of an

13  underlying impairment 'which could reasonably be expected to produce the pain

14  or other symptoms alleged.'"  *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344

15  (9th Cir. 1991) (en banc)).  The ALJ found that Hernandez's medically

16  determinable impairments could reasonably be expected to produce the alleged

17  symptoms.  AR 21.

18      "Second, if the claimant meets this first test, and there is no evidence of

19  malingering, the ALJ can reject the claimant's testimony about the severity of her

20  symptoms only by offering specific, clear and convincing reasons for doing so."

21  *Lingenfelter*, 504 F.3d at 1036 (citation and quotation marks omitted).  "In making

22  a credibility determination, the ALJ 'must specifically identify what testimony is

23  credible and what testimony undermines the claimant's complaints[.]'"  *Greger v.*

24  *Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citation omitted).  The ALJ found that

25  Hernandez's statements concerning the intensity, persistence and limiting effects

26  of the alleged symptoms were not credible to the extent they were inconsistent

27  with the RFC.  AR 21.

28

In weighing credibility, the ALJ may consider factors including:  the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (e.g., movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing Social Security Ruling 88-13)[7] (quotation marks omitted).  The ALJ may consider (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment.  *Thomas*, 278 F.3d at 958-59.

The ALJ noted Hernandez's allegations that she had pain "all over," could walk no more than one block due to chronic musculoskeletal pain, could lift 5 to 10 pounds, could stand/walk for 15 minutes and sit for 30-45 minutes, and could not work because of musculoskeletal pain.[8]  AR 21, 37-39, 166-67.  The ALJ discounted Hernandez's credibility for at least four reasons:  (1) lack of supporting objective evidence; (2) inconsistencies in Hernandez's statements; (3) conservative treatment; and (4) inconsistencies between Hernandez's statements and daily activities.  AR 21-22.

"Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  For the reasons discussed above, the ALJ determined that the objective medical evidence does

---

[7]  "Social Security Rulings do not have the force of law.  Nevertheless, they constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

[8]  Contrary to her argument, the ALJ cited to Hernandez's testimony regarding her musculoskeletal pain.  AR 22.

1  not support the alleged severity of Hernandez's symptoms.  The ALJ did not rely
2  upon this reason alone and did not err.

3          The ALJ noted that Hernandez's statements regarding her allegedly
4  disabling symptoms "have not been consistently described."  AR 22.  An ALJ may
5  consider inconsistencies in a claimant's statements when weighing a claimant's
6  credibility.  *Thomas*, 278 F.3d at 958-59.  Hernandez testified that she stopped
7  working due to arm pain.  AR 22, 36.  However, in the Disability Reports,
8  Hernandez did not mention arm pain among the conditions that prevented her
9  from working.  AR 22, 153, 176, 200.  She stated that she stopped working
10  because she was laid off.  AR 154.

11         The ALJ noted that Hernandez's treatment "ha[d] been essentially routine
12  and/or conservative in nature."  He found no evidence that Hernandez had sought
13  or received injections, surgeries, or treatment other than medication.  AR  22.
14  Hernandez has identified no treatment that was not conservative.  "[E]vidence of
15  'conservative treatment' is sufficient to discount a claimant's testimony regarding
16  severity of an impairment."  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007)
17  (citation omitted).

18         The ALJ noted that Hernandez's alleged limitations "appear to be
19  inconsistent with her reported daily activities," especially her "considerable
20  amount of standing/walking."  AR 22.   An ALJ may consider a claimant's daily
21  activities when weighing credibility.  *Bunnell*, 947 F.2d at 346.  In October 2009,
22  Hernandez indicated she had no problems dressing, grooming and bathing.  AR
23  22, 261.  She could shop for groceries, cook, do dishes, do laundry and take
24  short walks.  AR 22, 261.  At the hearing, Hernandez testified she leaves the
25  house every day to visit a daughter or go grocery shopping with her husband.  AR
26  22, 38.  She cooks, drives and cleans the house.  AR 22, 36, 38-39.  When the
27  evidence is susceptible to more than one rational interpretation, the court must
28  defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

1     The ALJ's credibility finding is supported by substantial evidence, and this

2  court "may not engage in second-guessing." *Thomas*, 278 F.3d at 959 (citing

3  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

4     **G.   Development of the Record**

5     Hernandez contends the ALJ failed to develop the record regarding her

6  mental health treatment.

7     It is the claimant's duty to prove she is disabled. *Mayes v. Massanari*, 276

8  F.3d 453, 459 (9th Cir. 2001) (as amended); *see* 42 U.S.C. § 423(d)(5)(A) (the

9  claimant must furnish medical and other evidence of her disability); 20 C.F.R. §

10 404.1512(c) ("You must provide medical evidence showing that you have

11 impairment(s) and how severe it is during the time you say you are disabled.").

12    "The ALJ . . . has an independent duty to fully and fairly develop the record

13 and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*,

14 242 F.3d 1144, 1150 (9th Cir. 2001) (citations and quotation marks omitted).

15 "The ALJ must be especially diligent when the claimant . . . has only a lay

16 representative." *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) (internal

17 quotation marks omitted).  "An ALJ's duty to develop the record further is

18 triggered only when there is ambiguous evidence or when the record is

19 inadequate to allow for proper evaluation of the evidence." *Mayes*, 276 F.3d at

20 459-60.  This principle does not, however, allow a claimant to shift her own

21 burden of proving disability to the ALJ.  *Id.* at 459.

22    Hernandez testified that Dr. Palazzollo prescribed medication for anxiety or

23 depression, but that she gets the medication from Mexico, and sees Dr. Torrijos

24 in Mexico once a year.[9]  AR 39-40.  Hernandez argues the ALJ should have

25 obtained the records from Mexico or instructed her representative to obtain them.

26

27 ─────────────

28    [9]  The record contains Dr. Palazzollo's treatment records.  AR 237-53.  Dr.
Palazzollo noted only anxiety about domestic problems.  AR 239.

1    The ALJ's duty to develop the record further was not triggered.  The ALJ

2    concluded Hernandez has an affective disorder that would not have more than a

3    minimal effect on her ability to work.  AR 19.  He noted that she did not allege any

4    mental impairment, psychological symptoms, or mental limitations on the

5    Disability Report she completed in connection with her disability application.  AR

6    19, 153.  In her Disability Report – Appeal, Hernandez alleged a "new" condition

7    in that she was "sometimes depressed."  AR 19, 200.

8    The ALJ noted that the record did not reflect a significantly limiting

9    depressive disorder.  AR 19.  Dr. Duong performed a psychiatric evaluation on

10   October 20, 2009.  AR 19, 267-71.  Hernandez reported that she started feeling

11   depressed about two years ago with her father's death, but she was not currently

12   seeing a psychiatrist, was not taking any psychiatric medications, and had never

13   been hospitalized psychiatrically.  AR 19, 268.  Her daily activities were

14   "unaffected by psychiatric reasons."  AR 19, 269.  Dr. Duong found that

15   Hernandez was alert, cooperative and relaxed, and maintained good eye contact.

16   Her psychomotor activity, thought process, and thought content were within

17   normal limits.  Her affect was depressed but alert and oriented to person, place,

18   time, and situation.  AR 19, 269.  Dr. Duong diagnosed depressive disorder, NOS

19   with a Global Assessment of Functioning ("GAF") score of 75.[10]  He opined that

20   Hernandez's ability to perform basic mental work activities was normal.  AR 19,

21   270.  The State Agency psychiatric consultant, Dr. Balson, agreed that

22   Hernandez did not have a severe mental impairment.  AR 19-20, 278-88.  In

23   addition, the ALJ noted that the lack of psychiatric treatment suggested that

24   Hernandez's depressive symptoms would not significantly interfere with her ability

25   to work.  AR 19.

26   

27   [10]  A GAF of 71-80 indicates "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors . . . ; no more than slight

28   impairment in social, occupational, or school functioning."  Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000).

1    The ALJ did not find that the record was insufficient or inadequate to

2    determine disability.  Nor does the record establish ambiguity or inadequacy.

3    There was no request that the ALJ hold the record open to allow her to obtain Dr.

4    Torrijos' records from Mexico.  Hernandez's representative elicited testimony

5    regarding Dr. Torrijos and established that she takes Numencial for depression

6    once or twice a day.  AR 40.  The ALJ did not err.

## IV.

## **ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: October 24, 2013

_____
ALICIA G. ROSENBERG
United States Magistrate Judge

16